## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

VINICIO ORTIZ-ALVARADO,
NOEL SALOMON MENA,
and JUAN CARLOS MENA,
on behalf of themselves and
all other individuals similarly situated,

                Plaintiffs,


v.

JEOVANI GOMEZ, et al.,

                Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 14-209 (MJD/SER)

Charlie R. Alden, Thompson Hall Santi Cerny & Dooley, and Matthew J. Gilbert, Gilbert Law Office PLLC, Counsel for Plaintiffs.

Martin D. Kappenman, Seaton, Peters & Revnew, P.A., Counsel for Defendants.

## I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Conditional Class

Certification, Court Authorized Notice, and Tolling of Statute of Limitations

[Docket No. 31] and on Defendants' Motion to Supplement the Record [Docket

No. 58].  The Court heard oral argument on August 1, 2014.

## II.    BACKGROUND

1

### A.     Factual Background

### 1.      General Background

Defendants Jeovani Gomez and Marcos Gomez are brothers who operate a

number of restaurants in Minnesota and possibly other states.  (Alden Aff. ¶¶ 2-

4.)  The Gomez brothers hired Plaintiffs Vinicio Ortiz-Alvarado, Noel Salomon

Mena, and Juan Carlos Mena to work in their restaurants.  (Alden Aff., Ex. 1,

Ortiz-Alvarado Aff. ¶ 2; Alden Aff., Ex. 2, N. Mena Aff. ¶ 2; Alden Aff., Ex. 3, J.

Mena Aff. ¶ 2.)  Plaintiffs' responsibilities included cleaning dishes, taking orders

from customers, serving customers, preparing food in the kitchen, and other

responsibilities to operate the restaurant.  (Ortiz-Alvarado Aff. ¶¶ 3-4; N. Mena

Aff. ¶¶ 4-5; J. Mena Aff. ¶¶ 3-4.)  Plaintiffs claim that they consistently worked

uncompensated overtime hours at the direction of Defendants.

### 2.      Plaintiff Vinicio Ortiz-Alvarado

In approximately 2001, Plaintiff Vinicio Ortiz-Alvarado was hired to work

at El Loro in Burnsville, Minnesota.  (Ortiz-Alvarado Aff. ¶ 2.)  Ortiz-Alvarado

started working as a dishwasher and then became a server when it was

discovered he spoke English.  (Id. ¶ 3.)  Ortiz-Alvarado also prepared food prior

to the start of meal service, cleaned up after meal service, entered food orders,

and served customers.  (Id. ¶ 4.)  Because of his ability to speak English, Ortiz-

Alvarado was also required to order food and liquor and perform some payroll duties.  (Id. ¶¶ 5-7.)  The payroll duties consisted of deleting employees' hours that had gone beyond 35 hours in a given week from the computer system maintained for the restaurant.  (Id. ¶ 7.)  At Jeovani Gomez's direction, Ortiz-Alvarado would physically delete the correctly clocked hours, and re-write the total as some amount around 35 hours.  (Id. ¶ 8.)

The Gomez brothers asked Ortiz-Alvarado to recruit immigrants as employees at their restaurants.  (Id. ¶ 10.)  Although Ortiz-Alvarado informed potential employees that they would not receive overtime, they still accepted the Gomez brothers' conditions because of their desperation for work.  (Id. ¶ 11.)

Ortiz-Alvarado opines that the practice of writing off hours applied to all restaurants owned by the Gomez brothers.  (Ortiz-Alvarado Aff. ¶ 11.)  Ortiz-Alvarado also noticed that the few Caucasian employees, who were generally hostesses at the restaurants, never had their hours reduced.  (Id. ¶¶ 14-15.)  Jeovani Gomez told Ortiz-Alvarado that he should not write off the Caucasian employees' hours because they might report that they were not being paid overtime.  (Id. ¶16.)

### 3.    Plaintiff Noel Salomon Mena

In approximately September 2009, Plaintiff Noel Salomon Mena was hired to work at El Azteca in Plymouth, Minnesota.  (N. Mena Aff. ¶ 2.)  Noel Salomon also worked at El Toro in Champlin, Minnesota.  (Id. ¶ 3.)  In June 2011, he moved to El Toro in Robbinsdale, Minnesota.  (Id.)  He was hired as a dishwasher, but became a cook after some time.  (Id. ¶ 4.)  While Noel Mena would work ten hours per day, generally for six or seven days per week, he was paid a flat rate of $800 for every two weeks of work.  (Id. ¶¶ 5-6.)  If Noel Mena received a check for more than $800, Jeovani Gomez required him to cash his check at the bank and bring back any cash beyond $800.  (Id. ¶ 7.)  Noel Mena would clock in approximately 90 minutes after he started work, would clock in two hours after his lunch break had ended, and was often required to work on weekends without recording those hours.  (Id. ¶¶ 8-9.)  He clocked in at the times that Jeovani Gomez or the restaurant management directed.  (Id. ¶ 8.)

Noel Mena observed that other co-workers were also clocking in late and failing to report hours.  (N. Mena Aff. ¶ 10.)  He noted that when he stopped working for El Azteca in late 2013, Jeovani Gomez asked him on his way out how he would tell people he was paid.  (Id. ¶ 11.)  When he responded by saying he

was "salaried," Jeovani Gomez told him he had to tell people he was paid hourly.  (Id.)

### 4.    Plaintiff Juan Carlos Mena

In 2008, Plaintiff Juan Carlos Mena was hired to work at El Potrillo, which later changed its name to El Toro, in Burnsville, Minnesota.  (J. Mena Aff. ¶ 2.) He started working as a dishwasher, but became a busboy, and then a waiter. (Id. ¶ 3.)  While he started work at 9:00 a.m. on Monday through Thursday, Jeovani Gomez instructed him and other employees to punch in at 10:30 a.m. (Id. ¶ 4.)  Juan Carlos Mena would take a break from 3:00 to 5:00 p.m. and punch out at 7:00 or 7:30 p.m., as instructed by Jeovani Gomez, but would continue to work until 9:00 or 10:00 p.m.  (Id. ¶¶ 5-6.)  On Fridays and Saturdays, he would work the same hours, except that he would work until 11:00 p.m. or 12:00 a.m. (Id. ¶ 8.)  Jeovani Gomez explained to Juan Carlos Mena and other employees that he did not pay overtime or compensate for all hours worked because "the restaurant is in hard times."  (Id. ¶¶ 9-10.)  Juan Carlos Mena also observed other co-workers clocking in late, and clocking out early, to make sure their hours did not reach overtime.  (Id. ¶ 11.)  He worked in excess of 60 or 70 hours each week,

but either reduced his own hours by incorrectly clocking in and out, or others

wrote off any hours over 35.  (Id. ¶ 12.)

### 5.      Witness Luis Ramirez

On July 18, 2014, Defendants filed a motion to supplement the record to

include the deposition testimony of Luis Ramirez.  Ramirez's deposition

occurred on June 11, 2014.  Ramirez worked for Jeovani Gomez and Marco

Gomez at El Loro in Crystal and Burnsville, El Rey Azteca in Chanhassen and

Waconia, El Azteca in Anoka and Plymouth, and El Toro in St. Paul and

Robbinsdale.  (Kappenman Aff., Ex. A, Ramirez Dep. 11-14, 24-25.)  Ortiz-

Alvarado was his supervisor at El Toro in Robbinsdale.  (Id. 28.)  Ramirez

claimed that Ortiz-Alvarado would order employees to work after they had

already punched out.  (Id. 33.)  Ramirez testified that Ortiz-Alvarado pressured

him to join the current lawsuit and offered him money to join the lawsuit.  (Id.

15.)

Ramirez also testified that he encountered Ortiz-Alvarado at a bar and

Ortiz-Alvarado was accompanied by gang members.  (Id. 52-53.)  Ramirez

further testified that Ortiz-Alvarado tried to hit him and threatened to have his

friends beat up Ramirez if he failed to support Ortiz-Alvarado in this lawsuit.

(Id. 53).   Ramirez testified that he was afraid that Ortiz-Alvarado would do something to him or his daughters in retaliation.  (Id. 54.)

## B.      Procedural History

On January 3, 2014, Plaintiffs Ortiz-Alvarado, Noel Salomon Mena, and Juan Carlos Mena commenced an action against Defendants Jeovani Gomez; Marcos Gomez; El Potrillo LLC; El Toro, Inc.; XYZ Corp.; and ABC, LLC; in Hennepin County Court.  The Complaint, which did not contain class action or collective action allegations, alleged violations of the Fair Labor Standards Act ("FLSA") and the Minnesota Fair Labor Standards Act ("MFLSA") for failure to pay overtime wages and minimum wages and failure to keep records; violation of the Minnesota Payment of Wages Act; race or national origin discrimination in violation of the Minnesota Human Rights Act ("MHRA"); breach of contract; and unjust enrichment.  The action was removed to this Court on January 22, 2014.

On April 10, 2014, Plaintiffs filed an Amended Complaint alleging class action and collective action allegations.  On April 23, Plaintiffs filed the Second Amended Complaint against Defendants Jeovani Gomez, Marcos Gomez, El Loro, Inc. d/b/a El Loro Mexican Restaurant, El Toro of St. Paul, Inc. d/b/a El Toro Mexican Restaurant, El Azteca of Anoka, and Does 1 through 10, inclusive.  The Second Amended Complaint alleges: Count 1: Violation of the FLSA (Overtime,

Minimum Wage, and Record-Keeping Violations); Count 2: Violation of the

MFLSA (Overtime, Minimum Wage, Rest and Meal Breaks, Minimum Wage and

Overtime Notices, and Record Keeping Violations); Count 3: Violation of Title

VII of the Civil Rights Act of 1964; Count 4: Racial Discrimination in Violation of

the MHRA; Count 5: Violation of Minnesota Payment of Wages Act (Minn. Stat.

§§ 181.001, et seq.); Count 6: Imposition of Civil Penalties Against El Toro (Minn.

Stat. § 177.30, § 181.101); and Count 7: Quantum Meruit.  Plaintiffs assert a

collective action under the FLSA claim and a class action for the remaining

claims.

Plaintiffs now bring a Motion for Conditional Class Certification, Court

Authorized Notice, and Tolling of Statute of Limitations.  Defendants bring a

Motion to Supplement the Record.

## III.   DISCUSSION

### A.   Motion to Supplement the Record

Defendants have filed a motion to supplement the record to provide the

deposition testimony of Luis Ramirez.  Defendants' opposition to the class

certification motion was filed on May 22.  On May 27, Plaintiffs noticed the

deposition of Ramirez.  Ramirez's deposition occurred on June 11, and the

transcript was prepared June 21.

8

The Court grants the motion to supplement the record.  Ramirez's deposition testimony is relevant to aspects of the motion for conditional certification, namely, whether sensitive contact information, such as telephone numbers, of prospective class members should be provided to Plaintiffs.  The deposition testimony was not available until after Defendants filed their opposition.  Plaintiffs, themselves, noticed Ramirez's deposition, so there is no unfair prejudice to them from including his testimony in the record.

At this stage of the litigation, the Court does not make a credibility determination regarding the accuracy of Ramirez's allegations or Plaintiffs' affidavits.  However, the Court takes into account the serious allegations of witness tampering insofar as it holds that measures must be taken to protect potential plaintiffs from undue influence.  Given the allegations of threats by Plaintiff Ortiz-Alvarado, there is no need for the named Plaintiffs to possess personal contact information for potential opt-in plaintiffs.  Only Plaintiffs' counsel needs this information.

**B.**     **Standard for Conditional Class Certification**

Plaintiffs seek conditional class certification and Court-facilitated notice pursuant to the FLSA, 29 U.S.C. § 216(b).  The statute provides:

> An action . . . may be maintained against any employer . . . in any
> Federal or State court of competent jurisdiction by any one or more
> employees for and in behalf of himself or themselves and other
> employees similarly situated.  No employee shall be a party plaintiff
> to any such action unless he gives his consent in writing to become
> such a party and such consent is filed in the court in which such
> action is brought.

Id.

The Court performs a two-step process to determine whether a case should

be certified under the FLSA:

> First, the court determines whether the class should be conditionally
> certified for notification and discovery purposes.  At this stage, the
> plaintiffs need only establish a colorable basis for their claim that the
> putative class members were the victims of a single decision, policy,
> or plan.  In the second stage, which occurs after discovery is
> completed, the court conducts an inquiry in several factors,
> including the extent and consequences of disparate factual and
> employment settings of the individual plaintiffs, the various
> defenses available to the defendant that appear to be individual to
> each plaintiff, and other fairness and procedural considerations.

Dege v. Hutchinson Tech., Inc., Civil No. 06-3754 (DWF/RLE), 2007 WL 586787,

at *1 (D. Minn. Feb. 22, 2007) (citations omitted).

In the first step,

> the Court only must determine whether Plaintiffs have come
> forward with evidence establishing a colorable basis that the
> putative class members are the victims of a single decision, policy, or
> plan.  The court does not make any credibility determinations or

findings of fact with respect to contrary evidence presented by the
parties at this initial stage.

Id. at *2 (citations omitted).

This case is at the first step.

## C.      Whether Plaintiffs Are Similarly Situated

The term "similarly situated" is not defined by the FLSA, but "typically

requires a showing that an employer's commonly applied decision, policy, or

plan similarly affects the potential class members, and inflicts a common injury

on plaintiffs and the putative class." Keef v. M.A. Mortenson Co., No. 07-CV-

3915 (JMR/FLN), 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008) (citation

omitted).

The conditional certification standard at this initial stage is very low, and

the standard has been met here.  At this stage, Plaintiffs need only establish a

colorable basis for their claim that the putative class members were the victims of

a single decision, policy, or plan.  Taking Plaintiffs' affidavits as true, as part of a

single plan to reduce expenses and increase profits in their related restaurants,

the Gomez brothers targeted Hispanic workers and refused to pay them

overtime and the minimum wage.

At this stage, accepting the allegations in Plaintiffs' affidavits as true, Plaintiffs aver that they performed the same job duties at the restaurants owned or operated by Jeovani and Marcos Gomez.  Plaintiffs were aware of other employees being treated the same way.  On the instruction of Jeovani Gomez, Ortiz-Alvarado deleted certain hours of the members of the putative class. Defendants paid Plaintiffs on a salary basis or recorded their hours to not exceed the limit where overtime should have been paid.  Defendants insisted Plaintiffs work as much as necessary, including coming in for weekend shifts, but not record their time.  Plaintiffs voluntarily reduced their own hours, knowing someone else would reduce them if they did not.  Defendants refused to obey overtime wage laws, despite being aware of them, and instructed their employees to enforce this unlawful policy on all Hispanic employees. Defendants falsified work records and did not keep accurate records of correct hours worked by their employees.  Defendants instructed that their employees must tell anyone, if asked, that they were paid hourly.  These allegations sufficiently allege a common plan or scheme such that conditional certification is appropriate.

Although the Court grants Plaintiffs' motion for conditional class

certification, on the record currently before the Court, the Court is unable to

define the scope of the conditional class.  The specific contours of the conditional

class will be addressed before the Special Master, as informed by this Opinion.

### D.    Court Authorized Judicial Notice

"[D]istrict courts have discretion, in appropriate cases, to implement 29

U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  Hoffmann–La

Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989).  "Because trial court involvement

in the notice process is inevitable in cases with numerous plaintiffs where written

consent is required by statute, it lies within the discretion of a district court to

begin its involvement early, at the point of the initial notice, rather than at some

later time."  Id. at 171.  "By monitoring preparation and distribution of the notice,

a court can ensure that it is timely, accurate, and informative.  Both the parties

and the court benefit from settling disputes about the content of the notice before

it is distributed.  This procedure may avoid the need to cancel consents obtained

in an improper manner."  Id. at 172.  "Court authorization of notice serves the

legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff

dates to expedite disposition of the action."  Id.  Here, the Court exercises its

discretion to facilitate notice in this case.

13

### 1.    Scope of the Class

Under the FLSA, the statute of limitations is two years, with an extension

to three years if the violation is willful.  29 U.S.C. § 255.  "In the case of a

collective action under the FLSA, the action is commenced when a party files his

or her written consent to become part of the action."  Redman v. U.S. W. Bus.

Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998).  Based on the maximum statute of

limitations of 3 years, the notices apply to potential class members who worked

in the relevant restaurants within the past 3 years.  Additionally, at this time,

there is no basis, beyond speculation, to provide notice to potential employees of

Defendants who work in Virginia or other states.  The record contains no specific

information about these alleged out-of-state restaurants and no evidence that

employees at those restaurants may be subject to FLSA violations.

The notice should be sent to employees who have worked, in the last three

years, at restaurants owned or operated by Defendants in Minnesota.  These

current and former employees fit within allegations of a "single policy and plan"

and the statute of limitations, and therefore should be sent a notice of the

lawsuit.

At this time, the parties have not informed the Court which specific

restaurants are covered by the notice and proposed class.  With the assistance of

14

the Special Master, the parties are ordered to meet and confer regarding a

complete list of all restaurants owned or operated by Defendants within the State

of Minnesota within the past 3 years.  If the parties are unable to agree on the

relevant restaurants, the Special Master shall provide a recommendation to the

Court regarding the specific list of restaurants to be included in the scope of the

conditional class.

## 2.      Time Period to Opt In

Plaintiffs ask that the Court order a 180- or 90-day notice period for

putative class members to join the case.  Defendants argue that a 30-day window

is adequate.  Given that many of the potential class members do not speak

English and are likely to frequently move jobs and/or addresses, the Court

concludes that an extended opt-in period of 90 days is necessary.

## 3.      Method of Notice

### a)      Reminder Letters

Plaintiffs ask the Court to authorize Plaintiffs' counsel to send two

reminder letters to the FLSA putative class after the initial Notice is mailed,

during the 90-day notice period.  Plaintiffs opine that reminder letters act as both

a reminder and as a way to ensure that if notices were misplaced, unopened, or

not received, those persons still have a fair opportunity to join.  Further, Plaintiffs

argue that reminder letters will reduce the amount of late opt-ins.

The Court concludes that one reminder notice is reasonable to ensure that

potential class members do receive the Notice and, if they so desire, file a timely

opt-in notice.  The specifics regarding the contents of the reminder notice, the

timing of that reminder notice, and the recipients of that notice will be addressed

before the Special Master.

### b)      Posting of Notice

Plaintiffs further request that the Court require Defendants to post the

Court-authorized notice at every restaurant that the Gomez brothers own,

operate, or are affiliated with.  The Court agrees that, given the difficulty in

reaching potential class members through the mail, posting the Notice in the

appropriate restaurants would help to provide optimal notice.  The list of

restaurants in which to post the notice and the specific location for the postings

are issues that will be addressed before the Special Master.

### 4.      Personal Information of Potential Opt-In Plaintiffs

Plaintiffs request that the Court order Defendants to provide them with

the last known contact information for each potential opt-in plaintiff, including

their full names, last known addresses, all telephone numbers on file, email

addresses, positions, and dates of employment.  The Court holds that no

telephone numbers shall be provided to Plaintiffs or Plaintiffs' counsel.

Telephone numbers are confidential and sensitive information, and telephone

communications would be unmonitored and outside the Court-approved notice,

which is particularly troubling given the allegation of witness intimidation in

this case.  Similarly, the Court sees no need to provide email addresses to

Plaintiffs.  Communication shall be limited to U.S. mail and notices posted in the

appropriate restaurants to allow putative class members to make their own

decisions with unbiased information provided by the approved judicial notice.

　　　　The Court also holds that, in light of the deposition testimony accusing one

of the named Plaintiffs of witness intimidation, the list of the names of potential

opt-in plaintiffs and their addresses shall be for Plaintiffs' counsel's eyes only.

Plaintiffs' counsel are ordered that contact information for potential opt-in

plaintiffs that they receive from Defendants shall not be shared with named

Plaintiffs.  If a potential plaintiff chooses to opt into this litigation, then, and only

then, shall his or her identity be publicly revealed.  Violation of this order may

result in severe sanctions in this case and may also result in a report to the

Lawyers Professional Responsibility Board.

### 5.     Contents of the Notice

Defendants raise numerous specific objections to the language of the

proposed Notice, including that the Notice should provide an explanation of the

statute of limitations, the fact that opt-in plaintiffs will need to enter into a

binding fee agreement with Plaintiffs' counsel, and that the Court has made no

decision of the merits of the claims and defenses at this point.  The proposed

Notice also fails to note the effects of joining or not joining the lawsuit – plaintiffs

who join will be bound by any rulings or judgments in this lawsuit and those

who do not join can file their own lawsuits if they so desire.  At oral argument,

Plaintiffs stated that they would like to send a Spanish translation of the Notice.

The parties shall, with the assistance of the Special Master, agree on the specific

language for the Notice, and reminder letter, to be presented to this Court for

final approval.  The parties are instructed that they may wish to review previous

notices approved by this Court in other FLSA collective action cases as a starting

point for their discussions.

### E.     Tolling

Plaintiffs request that the Court use equitable estoppel and equitable tolling to toll the three-year statute of limitations from the date that Plaintiffs filed the motion for conditional certification until 90 days after the potential opt-in plaintiffs receive notice of the current lawsuit.

Under the FLSA, the statute of limitations is two years, with an extension to three years if the violation is willful.  29 U.S.C. § 255.  "A cause of action 'accrues' under the FLSA when an employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends."  Thompson v. CenturyTel of Cent. Ark., LLC, No. 4:08CV04198 JLH, 2009 WL 3245734, at *5 (E.D. Ark. Oct. 7, 2009) (citing Mid–Continent Petroleum Corp. v. Keen, 157 F.2d 310, 316 (8th Cir. 1946)), aff'd on other grounds 403 Fed. App'x 114 (8th Cir. 2010); see also 29 CFR § 790.21(b).  "In the case of a collective action under the FLSA, the action is commenced when a party files his or her written consent to become part of the action."  Redman, 153 F.3d at 695.

At this stage in the case, the Court cannot issue an informed ruling on whether equitable estoppel or equitable tolling should apply.  Also, it is "unclear whether tolling the statute of limitations, if it were appropriate, would impact

the claims of any opt-in plaintiff." <u>Ahle v. Veracity Research Co.</u>, Civil No. 09-00042 (ADM/RLE), 2009 WL 3103852, at *7 (D. Minn. Sept. 23, 2009).  Thus, the Court will deny, without prejudice, Plaintiffs' request for blanket equitable tolling.  Plaintiffs may raise the issue of equitable estoppel and/or equitable tolling at a later date if those doctrines would apply to particular plaintiffs and if their application is supported by facts in the record.

### F.   Special Master

The Court has provided clear direction to the parties regarding multiple aspects of the contents of the Notice.  However, many issues regarding the contents of the Notice and the scope of the class remain unresolved.  The parties have demonstrated an inability to communicate with one another on the most basic issues of which restaurants are at issue and what language should be included in the Notice.  The parties are directed to meet and confer and come to an agreement on the unresolved issues related to the scope of the class, the method of notice and the specific contents of the Notice.

The Court appoints retired U.S. Magistrate Judge Arthur J. Boylan as Special Master for the purpose of assisting the parties in finalizing a joint proposed Notice for this Court's approval.  If, after working with Special Master Boylan, the parties are unable to agree on particular issues related to the scope of

the class, the method of notice, and the specific contents of the Notice, Special

Master Boylan shall issue a Report and Recommendation resolving those issues

and setting forth the proposed Notice to be approved by this Court.  The parties

shall have 14 days from the date of the filing of the Report and Recommendation

to file any objections to the proposed Notice.  A party may respond to the

objecting party's brief within 14 days after service thereof.  All briefs filed shall

be limited to 3,500 words.  This Court shall make a de novo determination of

those portions of the Report and Recommendation to which objection is made.

The parties shall split the cost of the Special Master's fees.  Plaintiffs' counsels'

portion of the Special Master's fees shall not be passed onto their clients.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1. Plaintiffs' Motion for Conditional Class Certification, Court Authorized Notice, and Tolling of Statute of Limitations [Docket No. 31] is **GRANTED**.

2. Defendants' Motion to Supplement the Record [Docket No. 58] is **GRANTED**.

3. The Court appoints Special Master Arthur J. Boylan to work with the parties to craft a stipulated proposed Notice for Court approval and to address the unresolved issues related to the scope of the class, the method of notice, and the specific contents of the Notice.  If the parties are unable to agree on

these issues, Special Master Boylan shall issue a Report and Recommendation regarding the scope of the class, the method of notice, and the specific contents of the Notice. Special Master Boylan shall be compensated at a rate of $500 per hour. The parties shall split the cost of Special Master Boylan's fees.


Dated:   August 12, 2014                     s/ Michael J. Davis
                                             Michael J. Davis
                                             Chief Judge
                                             United States District Court